United States District Court
Eastern District of New York

----------------------------------X

RIGHT TO BE, SOUTH ASIAN NETWORK,
ST. BARNABAS SENIOR CENTER OF LOS
ANGELES, ASIAN PACIFIC AMERICAN
LEGAL RESOURCE CENTER,

             Plaintiffs,

    - against -

PAMELA BONDI, in her official
capacity as Attorney General of the
United States, U.S. DEPARTMENT OF
JUSTICE, MAUREEN HENNEBERG, in her
official capacity as Acting Head of
the Office of Justice Programs,
OFFICE OF JUSTICE PROGRAMS, TAMMIE
GREGG, in her official capacity as
Acting Director of the Bureau of
Justice Assistance, and BUREAU OF
JUSTICE ASSISTANCE,

             Defendants.

----------------------------------X

**Memorandum and Order**

No. 25-cv-3676 (KAM) (CLP)

**Kiyo A. Matsumoto, United States District Judge:**

      Plaintiffs Right to Be, South Asian Network, St. Barnabas

Senior Center of Los Angeles, and the Asian Pacific American Legal

Resource Center (together, the "Right to Be Plaintiffs" or

"Plaintiffs") initiated this action on July 2, 2025 against U.S.

Attorney General Pamela Bondi, the U.S. Department of Justice

("DOJ"), Acting Head of the Office of Justice Programs Maureen

Henneberg, the Office of Justice Programs ("OJP"), Acting Director

of the Bureau of Justice Assistance Tammie Gregg, and the Bureau

of Justice Assistance (together, "Defendants") challenging Defendants' April 22, 2025 termination of the Congressionally funded Community-Based Approaches to Hate Crimes grant program (the "Anti-Hate Crimes Grant Program") awarded for Fiscal Years 2022, 2023, and 2024. (*See* ECF No. 1, "Compl." ¶¶ 24, 39, 43-45, 57, 61.) The Right to Be Plaintiffs bring this action under the Fifth Amendment Due Process Clause of the United States Constitution, the Constitution's Separation of Powers doctrine, the Administrative Procedure Act, 5 U.S.C. § 551, *et seq.*, ("APA"), and the Declaratory Judgment Act, 28 U.S.C. § 2210, *et seq.* to "enjoin and declare unlawful the illegal dismantling of the [Anti-Hate Crimes Grant] Program, including Defendants' termination of [the Right to Be] Plaintiffs' individual grants." (Compl. ¶ 5.)

Presently before the Court is Defendants' motion to transfer venue to the U.S. District Court for the District of Columbia under 28 U.S.C. § 1404(a). (*See* ECF No. 24, Def. Mot.; ECF No. 32, Def. Reply.) The Right to Be Plaintiffs oppose Defendants' motion. (*See* ECF No. 30, Pl. Opp.) For the reasons set forth below, Defendant's motion to transfer venue is GRANTED.

## BACKGROUND

Plaintiffs are Section 501(c)(3) organizations that were awarded federally funded grants through the Anti-Hate Crimes Grant Program to address hate incidents. (Compl. ¶¶ 3, 8-11.) "In furtherance of their missions, Plaintiffs have built entire

programs, staked their reputations, and hired staff while relying on those funds." (Compl. ¶ 3.)  Right to Be was awarded $400,000 in grant funding in fiscal year 2023 to support a program called "Bystander Intervention to Prevent and De-escalate Hate-Based Violence Against LGBT+ Community Members in Texas." (Compl. ¶ 8.) The South Asian Network was awarded $400,000 in grant funding during fiscal year 2022 to support its "Stop The Hate Project," which aimed to "enhance anti-Asian hate crime awareness among South Asians and provide resources to victims of anti-Asian hate crimes" in Artesia, California. (Compl. ¶ 9.)  The St. Barnabas Senior Center of Los Angeles d/b/a St. Barnabas Seniors Services received $400,000 in grant funding during fiscal year 2024 to support a project titled "Community-Based Approach to Hate Crimes Targeting the Older Adult Population in Los Angeles." (Compl. ¶ 10.)  The Asian Pacific American Legal Resource Center ("APALRC") received $388,843 in grant funding during fiscal year 2023 to support its "Stop Anti-Asian hate Campaign" in Washington, D.C. (Compl. ¶ 11.)

All Plaintiffs had their funding abruptly terminated on April 22, 2025 "before the conclusion of the performance period of any grant" and "without prior notice." (Compl. ¶¶ 8-11, 57.) Plaintiffs filed administrative appeals with the OJP challenging the termination of their respective grant funding in May 2025, but have not received any further communication regarding their

grants.  (Compl. ¶¶ 69-73.)

On July 2, 2025, Plaintiffs filed a complaint seeking declaratory and injunctive relief and alleging the following: (1) Defendants "engaged in an unconstitutional abuse of executive authority to override Congressional appropriations, usurping responsibilities vested in Congress in violation of the Separation of Powers Doctrine" (**Claim One**); (2) Defendants' *en masse* termination of the Anti-Hate Crimes Grant Program "usurped Congress' constitutional rights and powers and exceeded their statutory authority," were not "in accordance with law," and were "arbitrary and capricious," in violation of the APA, 5 U.S.C. §§ 706(2)(A)-(C) (**Claims Two and Three**); (3) Defendants' unilateral dismantlement of the Anti-Hate Crimes Grant Program "deprived [Plaintiffs'] of their legitimate claim of entitlement to Program funding in violation of their due process rights protected by the Fifth Amendment" (**Claim Four**); and (4) Defendants took action that was "contrary to specific Congressional appropriations legislation, exceed[ed] their legal authority, and [was] therefore *ultra vires*" (**Claim Five**).  (Compl. ¶¶ 118, 126, 129, 138, 153, 158.)

On July 23, 2025, Defendants moved for a pre-motion conference regarding their anticipated motion to transfer venue.  (ECF No. 24, Def. Mot.)  On July 30, 2025, Plaintiffs filed an opposition to Defendants' letter motion.  (ECF No. 30, Pl. Opp.)  On August

1, 2025, the Parties consented to treating the letters filed to date as Defendants' motion to transfer venue and Plaintiffs' opposition. (ECF No. 31, Joint Letter dated Aug. 1, 2025.) On August 8, 2025, Defendants filed a reply to Plaintiff's opposition. (ECF No. 32, Def. Reply.) The Court now considers Defendants' fully briefed motion to transfer venue pursuant to 28 U.S.C. § 1404(a).

<u>**LEGAL STANDARD**</u>

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, [and] in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]" 28 U.S.C. § 1404(a). "Deciding a motion to transfer involves a two-part inquiry: (1) whether the action could have initially been brought in the transferee court; and (2) whether the interests of justice and convenience of the parties and witnesses will be served by the transfer." *Gray v. Walgreens Boots All., Inc.*, No. 20-cv-04415 (JMA)(SIL), 2021 WL 1087696, at *1 (E.D.N.Y. Feb. 11, 2021) (citations omitted); *see also Forjone v. California*, 425 F. App'x 73, 74 (2d Cir. 2011) ("The determination whether to grant a change of venue requires a balancing of conveniences, which is left to the sound discretion of the district court.").

"[M]otions for transfer lie within the broad discretion of the courts and are determined upon notions of convenience and

fairness on a case-by-case basis." *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). Indeed, the district court's "discretion will not be disturbed upon appeal without a clear showing of abuse." *Forjone*, 425 F. App'x at 74. The movant has the burden of establishing by clear and convincing evidence that transfer is warranted. *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 113-14 (2d Cir. 2010).

## DISCUSSION

Here, the Parties do not dispute that this action could have been brought in the District of Columbia. (*See* ECF No. 24, Def. Mot. at 1; ECF No. 30, Pl. Opp. at 1.) Thus, the Court's inquiry focuses on whether the transfer will serve "the convenience [of the parties] and interest of justice," *Rabbi Jacob Joseph School v. Province of Mendoza*, 342 F. Supp. 2d 124, 130 (E.D.N.Y. 2004), considering, *inter alia*:

> (1) the convenience of witnesses, (2) the convenience of the parties, (3) the locus of operative facts, (4) the availability of process to compel the attendance of unwilling witnesses, (5) the location of relevant documents and the relative ease of access to sources of proof, (6) the relative means of the parties, (7) the forum's familiarity with the governing law, (8) the weight accorded the plaintiff's choice of forum, and (9) trial efficiency and the interest of justice, based on the totality of the circumstances."

*In re Hanger Orthopedic Grp., Inc. Sec. Litig.*, 418 F. Supp. 2d 164, 168 (E.D.N.Y. 2006) (quoting *Dealtime.com v. McNulty,* 123 F.

6

Supp. 2d 750, 755 (S.D.N.Y. 2000) (collecting cases)). "There is no strict formula for the application of these factors, and no single factor is determinative." *Myers v. Lennar Corp.*, No. 08-cv-2799 (JFB)(MLO), 2010 WL 1992200, at *3 (E.D.N.Y. May 17, 2010) (collecting cases). For the reasons set forth below, the Court finds that the balance of these factors weighs in favor of transferring venue to the District of Columbia.

Most persuasive is Defendants' argument that "transferring this case to the D.D.C. would be in the interests of justice and judicial economy" because the factual circumstances and claims at issue in the instant action "closely mirror" those brought in *Vera Institute of Justice, et al. v. DOJ*, No. 25-cv-1643 (D.D.C.) (hereinafter, "*Vera Institute*"). *Widakuswara v. Lake*, 2025 WL 1020231, at *2 (S.D.N.Y. Apr. 4, 2025); (ECF No. 32, Def. Reply at 1.) "With respect to 'judicial economy,' the Supreme Court has held that [the] 'interest of justice' encompasses the private and public economy of avoiding multiple cases on the same issues." *Rabbi Jacob*, 342 F. Supp. 2d at 130 (quoting *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960) ("to permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent")).

Indeed, "[t]here is a *strong* policy favoring the litigation

of related claims in the same tribunal in order that pretrial discovery can be conducted more efficiently, [duplicative] litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided." *Wyndham Assocs. v. Bintliff,* 398 F.2d 614, 619 (2d Cir. 1968) (emphasis added). "Therefore, courts consistently recognize that the existence of a related action in the transferee district is a strong factor to be weighed with regard to judicial economy, and may be determinative." *Delta Air Lines, Inc. V. Assoc. of Flight Attendants, CWA*, 720 F. Supp. 2d 213, 219 (E.D.N.Y. 2010) (quoting *Rabbi Jacob*, 342 F. Supp. 2d at 130 (collecting cases)).

The Right to Be Plaintiffs' arguments that this action is "dramatically different" from the factual background and claims brought in *Vera Institute* are unavailing. (ECF No. 30, Pl. Opp. at 2.) Although the cases are not identical, critically, "[t]he interests of justice require that the cases be related, not identical." *Columbia Pictures Indus. v. Fung*, 447 F. Supp. 2d 306, 309-10 (S.D.N.Y. 2006) (citation omitted); *see also Delta Air Lines*, 720 F. Supp. 2d at 219 n.4 ("[T]he Court's discretionary analysis is guided by its determination whether consolidation of the cases would promote judicial efficiency and avoid inconsistent results").

Here, the cases are sufficiently similar and, thus, related to warrant transfer. *First*, the factual circumstances giving rise

to plaintiffs' claims in *Vera Institute* and the instant action are strikingly similar.  Plaintiffs in both cases received federal grant funding that was abruptly terminated in April 2025.  (Compl. ¶ 4; ECF No. 1, No. 25-cv-1643 (D.D.C.), *Vera Inst.* Compl. ¶¶ 1-2.) Additionally, one of the named *Vera Institute* Plaintiffs, Chinese for Affirmative Action d/b/a Stop AAPI Hate, received its funding from the same Anti-Hate Crimes Grant Program as the Right to Be Plaintiffs and is a "U.S.-based non-partisan Civil Rights coalition dedicated to ending racism and discrimination against Asian Americans and Pacific Islanders (AAPIs)."  (ECF No. 1, No. 25-cv-1643 (D.D.C.), *Vera Inst.* Compl. ¶¶ 14, 31-32.)  Indeed, plaintiffs in both actions had their funding terminated on the same day—April 22, 2025—through the same boilerplate email that advised plaintiffs their "awards no longer effectuated the program goals or agency priorities," further demonstrating the factual similarity between the two cases.  (Compl. ¶¶ 61-62; ECF No. 1, No. 25-cv-1643 (D.D.C.), *Vera Inst.* Compl. ¶ 2.)

Beyond the related factual circumstances, though, the claims in both actions closely mirror each other.  In both cases, plaintiffs bring claims alleging violations of the APA and challenging the termination of the grants under the Fifth Amendment Due Process Clause and the Separation of Powers doctrine.  (*Compare* Compl. ¶¶ 110-61, *with*, ECF No. 1, No. 25-cv-1643 (D.D.C.), *Vera Inst.* Compl. ¶¶ 82-134.)  Although the Right to Be Plaintiffs argue

9

that the plaintiffs in *Vera Institute* allege a broader challenge to multiple OJP grant programs, whereas the Right to Be Plaintiffs allege a narrower challenge to just the Anti-Hate Crimes Grant Program, this is not determinative because "the requested injunctions in both cases depend largely on the same legal theories." *See Chamber of Comm. v. James*, No. 25-cv-1738 (MKV), 2025 WL 2586436, at *5 (S.D.N.Y. Sept. 8, 2025) (rejecting plaintiffs' argument that cases were not sufficiently related to warrant transfer because "the relief [plaintiffs] seek is 'narrower' than the relief sought by" plaintiffs in the related action in part because "the requested injunctions in both cases depend largely on the same legal theories").

Moreover, the fact that the court's denial of a preliminary injunction in *Vera Institute* has been appealed is not determinative when considering judicial economy, particularly where, as here the court in *Vera Institute* has granted a narrow injunction pending appeal that "prohibits Defendants from re-obligating or otherwise diminishing the sums awarded but terminated under [the *Vera Institute*] Plaintiffs' grant agreements." (ECF No. 57, No. 25-cv-1643 (D.D.C.), Order dated July 21, 2025 at 3 (granting the narrowed injunction and ordering the parties to submit a status report by September 29, 2025)); *see also Rabbi Jacob*, 342 F. Supp. 2d at 130 (transferring venue where plaintiff "sought the same relief sought here based upon the same facts and virtually

identical claims" and the transferee court had already "denied plaintiff's application for a preliminary injunction"). Critically, "in addition to promoting judicial economy, transfer [in this case] would also lessen the risk of conflicting injunctive relief, thereby promoting the interests of justice." *Widakuswara*, 2025 WL 1020231, at *3 (citing *Savin v. CSX Corp.*, 657 F. Supp. 1210, 1214 (S.D.N.Y. 1987) ("There is a strong policy favoring the litigation of related claims in the same tribunal in order that . . . inconsistent results can be avoided." (quoting *Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 619 (2d Cir. 1968)))).

Significantly, the locus of operative facts is also more closely tied to the District of Columbia than the Eastern District of New York, which weighs in favor of transfer. *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-cv-3826 (MKB), 2015 WL 5579872, at *9 (E.D.N.Y. Sept. 22, 2015) ("The location of the operative events is a primary factor in determining a § 1404(a) motion to transfer."). Two of the four Plaintiffs in this case are located in California, and one is located in the District of Columbia. (Compl. ¶¶ 9-11.) Indeed, only one Plaintiff, Right to Be, is based in Brooklyn, and the federal grant issued to Right to Be concerns work performed in Texas, not the Eastern District of New York, through a subgrantee located in Texas, the Pride Center of San Antonio. (Compl. ¶¶ 8, 53, 85-90.) On the other hand, Plaintiff APALRC is at home in the District of Columbia and the

11

federal grant issued to APALRC concerns work performed within the District of Columbia. (Compl. ¶ 49.) Thus, although the Eastern District is undoubtedly home to one Plaintiff, the same is true of the District of Columbia, and APALRC's work is more closely tied to the District of Columbia. Moreover, the Right to Be Plaintiffs specifically challenge decisions allegedly made by Defendants in the District of Columbia regarding the Anti-Hate Crimes Grant Program. (Compl. ¶¶ 12-17, 57-60.)

Certain remaining factors are neutral in the Court's transfer analysis. First, neither party has identified "witnesses [who] would be *unwilling* to testify at trial." *Atlantic Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 697 (S.D.N.Y. 2009); *In re Global Cash Access Holdings, Inc. Sec. Litig.,* No. 08-cv-3516 (SWK), 2008 WL 4344531, at *7 (S.D.N.Y. Sept. 18, 2008) ("As there are no allegations that any particular witnesses are *unwilling* to testify should this matter proceed to trial, this factor is neutral in the Court's analysis.") Indeed, neither party has identified any witnesses they intend to call. *See de Ratafia v. County of Columbia*, No. 12-cv-5457 (LAP) (DCF), 2013 WL 603128, at *5 (S.D.N.Y. Feb. 7, 2013) (finding this factor to be neutral where "no witness has submitted an affidavit informing the court as to the relative convenience of either forum"). Second, the location of relevant documents and access to sources of proof is generally neutral "in an era of electronic documents, easy copying

and overnight shipping." *Mazuma Holding Corp. v. Bethke*, 1 F. Supp. 3d 6, 30 (E.D.N.Y. 2014).  Third, "because both forums are well acquainted with the APA and constitutional law, that factor is also neutral." *Widakuswara*, 2025 WL 1020231, at *3.

The remaining two factors that could weigh against transfer are the relative means of the parties and the Right to Be Plaintiffs' choice of forum.  As to the means of the Parties, the Right to Be Plaintiffs argue that this factor weighs against transfer because they are "nonprofit organizations whose budgets were obliterated when Defendants unlawfully dismantled the [Anti-Hate Crimes Grant] Program" while Defendants "are the federal government with its deep pool of resources."  (ECF No. 30, Pl. Opp. at 2.)  The Right to Be Plaintiffs do not explain, however, why litigating in the District of Columbia would "increase the costs of litigating this case." *Chan v. iSpot, Inc.*, No. 20-cv-8222 (RA), 2021 WL 2480881, at *5 (S.D.N.Y. June 17, 2021); *see also It's a 10, Inc. v. PH Beauty Labs, Inc.*, 718 F. Supp. 2d 332, 338 (S.D.N.Y. 2010) ("[a] party arguing for or against a transfer because of inadequate means must offer documentation to show that transfer (or lack thereof) would be unduly burdensome to his finances.")  In this case, the Right to Be Plaintiffs' counsel has offices in New York and the District of Columbia and one Plaintiff is at home in the District of Columbia and runs a program with funding from the Anti-Hate Crimes Grant Program in the District of

Columbia.  Accordingly, at most, this factor is neutral in the Court's analysis.  *Chan*, 2021 WL 2480881, at *5 (finding this factor to be neutral where plaintiff failed to demonstrate why transfer would increase costs).

Finally, the only factor that could weigh against transfer is the Right to Be Plaintiffs choice of forum.  The Right to Be Plaintiffs argue that their decision to file in the Eastern District of New York demonstrates that litigating in this District would be more convenient for them.  (ECF No. 30, Pl. Opp. at 3.) Although "a plaintiff's choice of forum is presumptively entitled to substantial deference," *Gross v. British Broadcasting Corp.*, 386 F.3d 224, 230 (2d Cir. 2004), where, as here, "[t]here is no showing that this district is a more significant locus of operative facts than any other . . . plaintiffs' choice of forum is entitled to only slight weight in the transfer analysis." *Columbia Pictures*, 447 F. Supp. 2d at 310-11.

Moreover, the Right to Be Plaintiffs fail to demonstrate that transfer to the District of Columbia would cause undue hardship, rather than mere inconvenience. *See Goodall v. N.Y. State Dep't of Corr. & Comm. Supervision*, No. 19-cv-532 (KAM) (SJB), 2019 WL 4805029, at *3 (E.D.N.Y. Oct. 1, 2019).  Plaintiff Right to Be's residence in the Eastern District of New York would make litigating this case in the District of Columbia somewhat inconvenient for one Plaintiff, but Plaintiffs are "not entitled to an

inconvenience-free litigation." *Id.* Moreover, as set forth above, if litigating in the Eastern District of New York would make litigating this case more convenient for Right to Be, it follows that litigating in the District of Columbia would be more convenient for APALRC.

Accordingly, for the reasons set forth above, having weighed the relevant factors, the Court finds that Defendants have established by clear and convincing evidence that transfer is warranted. *First*, this case could have been brought in the transferee court and, *second*, "the interests of justice and convenience of the parties and witnesses [would] be served by the transfer" of this case to the District of Columbia. *Gray*, 2021 WL 1087696, at *1.

**CONCLUSION**

Defendants' motion to transfer venue pursuant to 28 U.S.C. § 1404(a) is GRANTED. The Clerk of Court is respectfully directed to transfer this case to the United States District Court for the District of Columbia and to close this case.

**So ordered.**

Dated:     September 16, 2025
           Brooklyn, New York

_____
**Kiyo A. Matsumoto**
United States District Judge
Eastern District of New York

15